United States of America
United States District Court: Western District of New York

CORTEZ FOSTER and PAULA RODGERS

              Plaintiffs,                                     **COMPLAINT**

Vs.

CITY OF BUFFALO POLICE OFFICER SHAWN MCCABE,
CITY OF BUFFALO POLICE OFFICER PATRICK MCDONALD,
CITY OF BUFFALO POLICE LIEUTENANT JONATHAN PIETRZAK,
CITY OF BUFFALO POLICE HOMICIDE DETECTIVE JOY JERMAIN,
NEW YORK STATE PAROLE OFFICER JOSE MELENDEZ,
NEW YORK STATE PAROLE OFFICER SEAN MCPARTLAND,
NEW YORK STATE PAROLE OFFICER THOMAS DEGOL,

              Defendants.

## <u>JURY DEMAND</u>

Trial by Jury on all issues is demanded.

## <u>PRELIMINARY INTRODUCTION</u>

1. This is a civil rights action brought pursuant to 42 United States Code ("U.S.C.") §1983

   for the numerous violations of Plaintiffs' Fourth Amendment rights, as well as the

   pendant state claims attached hereto. Specifically, on January 29, 2018, Plaintiffs' home

   at 21 Deerfield Avenue, Buffalo, NY 14215, was subjected to an illegal search by or at

   the behest of all named Defendants. As a result, Plaintiff Cortez Foster was subjected to

   an unlawful arrest and a malicious prosecution which lead to him being wrongfully

   imprisoned for roughly nine months. The illegal prosecution and incarceration of Plaintiff

   Foster came to an end when the Honorable Buffalo City Court Judge Amy Martoche

   dismissed all charges against Plaintiff Foster on their merits as of October 11, 2018.

## **PARTIES**

2. Plaintiff, Paula Rodgers, currently resides at 21 Deerfield Avenue, Upper Unit, Buffalo, NY 14215 and resided at the same during the events referenced in this complaint.

3. Plaintiff, Cortez Foster, currently resides at 910 East Eagle Street, Buffalo, NY 14210. He resided at 21 Deerfield Avenue Upper Unit, Buffalo, NY 14215 during the events referenced in this complaint.

4. Upon information and belief, City of Buffalo Police Officer Shawn McCabe is employed by the City of Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

5. Upon information and belief, City of Buffalo Police Officer Patrick McDonald is employed by the City of Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

6. Upon information and belief, City of Buffalo Police Lieutenant Jonathan Pietrzak is employed by the City of Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

7. Upon information and belief, City of Buffalo Police Detective Joy Jermain is employed by the City of Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

8. Upon information and belief, New York State Parole Officer Jose Melendez is employed by the State of New York and was acting in such capacity during the events which give rise to this lawsuit.

9. Upon information and belief, New York State Parole Officer Sean McPartland is employed by the State of New York and was acting in such capacity during the events which give rise to this lawsuit.

10. Upon information and belief, New York State Parole Officer Thomas Degol is employed by the State of New York and was acting in such capacity during the events which give rise to this lawsuit.

## **JURISDICTION**

11. Plaintiffs bring this action to recover damages for the violations to their civil rights under the Fourth Amendment of the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

12. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and § 1343 (civil rights).

13. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

14. Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Federal Rules of Civil Procedure ("FRCP") Rule 54.

15. At all times here mentioned, Defendants were acting under the color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of Buffalo and the State of New York.

16. Pursuant to the pendant state causes of action, Plaintiff Cortez Foster served a Notice of Claim against the relevant parties on or about November 28, 2018, and an examination has since been held pursuant to General Municipal Law (GML) 50-H.

## VENUE

17. This action properly lies in the Western District of New York, pursuant to 28 U.S.C. §
    1343(3), because the claims arose in this judicial district and the Defendants reside in
    and/ or do business in Erie County.

## FACTUAL BACKGROUND

18. Many of the factual allegations prior to the Plaintiffs' personal involvement in this series
    of events is based on testimony supplied at a suppression hearing and a decision issued
    by the Honorable Judge Amy Martoche on October 11, 2018. This decision is attached
    hereto as exhibit A.

19. During the events that give rise to this complaint, Plaintiff Cortez Foster was assigned to
    the supervision of New York State parole. Upon his release to parole on March 6, 2017,
    he was living with his mother at her parole approved address of 21 Deerfield Avenue
    Upper Unit, Buffalo, NY 14215.

20. The relevant events of this complaint begin on January 27, 2018 when a shooting incident
    occurred at Checkmates Bar, located at 1194 East Lovejoy Street, Buffalo, NY 14206.
    Neither Plaintiff was involved in any way, shape, or form to such incident; nor were they
    at the location in question on such date.

21. However, at some point between January 27, 2018 and January 29, 2018, a number of
    NYS Parole Officers and Buffalo Police Detectives reviewed a video of this shooting to
    see if they could positively identify any of the individuals involved with this incident.

22. One of the parole officers reviewing this video was Defendant McPartland, in addition to Defendants Degol and Jermain.

23. Defendant McPartland had been newly assigned to be Plaintiff Foster's parole officer. Defendant McPartland had never met Plaintiff Foster to this point.

24. Upon reviewing the video, Defendant McPartland came to believe "it was possible that the person in the video was Cortez Foster."

25. Upon information and belief, Defendant Jermain directed Defendants Degol and McPartland to initiate a raid and search of Plaintiff Foster and Rodgers' house.

26. At a subsequent suppression hearing, Defendant McPartland testified that the purported video, which was ultimately never produced, depicted a chaotic scene with numerous individuals moving about, and the video was of a low quality.

27. Defendant McPartland failed to specify as to how the individual depicted in the video resembled Plaintiff Foster, aside from saying that the individual in question was a medium sized black male. Plaintiff Foster has numerous tattoos and distinguishing characteristics, which should have been known by the Defendants, and could have ruled him out as being an individual present at Checkmates Bar.

28. The heavy Buffalo Police presence at the raid of Plaintiffs' home suggests that Defendant Jermain played a vital role in orchestrating such a seizure.

29. At roughly 10:00 P.M. on January 29, 2018, all above-named Defendants, save for Jermain and Degol, searched and seized Plaintiffs as well as their residence at 21 Deerfield Avenue Upper Unit.

30. While the initial accusatory instruments issued against Plaintiff Foster by Defendant McCabe claim that the search was conducted pursuant to a warrant, it would eventually be revealed that there was no search warrant issued in this matter.

31. The Defendants' engaged in a warrantless search of the Plaintiffs' home that lacked any probable cause, with Defendant McPartland and the New York State Department of Parole essentially acting as a conduit for the Buffalo Police Department to engage in a fishing expedition.

32. While conducting this illegal search, Defendant Melendez allegedly recovered a Norinco AK47 in the heating duct of the basement of 21 Deerfield Avenue. It should be noted that the basement of 21 Deerfield Avenue is a common area shared between both the upper and lower units of that residence. The individuals in the lower unit have criminal records, had previous and recent calls to their address, and, if one were to assume that no evidence was planted, then the existence of said weapons may well have been attributed to one of the people who lived in the lower unit. Plaintiff Foster never makes use of the basement area.

33. Defendant Melendez also recovered 75 rounds of 7.62 x 39mm ammunition.

34. Defendant McPartland recovered an additional 72 rounds of 7.62 x 39mm ammunition, a Smith and Wesson Model 29-2 .44 caliber revolver, and 27 rounds of 41 magnum Remington ammunition, all located in a heating duct in the basement.

35. Neither Plaintiff Foster or Rodgers ever possessed, whether constructively or otherwise, any of the above-referenced contraband.

36. Further, Plaintiff Foster had not gone to Checkmates Bar at any time since he was released to parole, and on January 27, 2018, he was at home abiding by his curfew at all times, as verified by several witnesses.

37. On January 29, 2018, Plaintiff Foster was eventually arrested and taken into custody.

38. Plaintiff Foster was ultimately charged with two counts of Criminal Possession of a Weapon in the second degree in violation of New York Penal Law §265.03(3); one count of Criminal Possession of a Weapon in the third degree in violation of New York Penal Law §265.02(7); and one count of Criminal Possession of a Weapon in the third degree in violation of New York Penal Law § 265.02(8).

39. All of these charges were the result of the illegal search upon Plaintiffs' home. Further, there was no probable cause to support any criminal charges against Plaintiff Foster.

40. As a result of these charges, Plaintiff Foster was incarcerated from January 29, 2018 until several days after the dismissal of all charges against him on October 11, 2018. As such, a certificate of disposition is attached hereto as exhibit B.

41. In the decision relating to the above-referenced suppression hearing, attached hereto as exhibit A, all evidence seized was suppressed as the underlying search was illegal, in that it was conducted in the absence of a search warrant, without any exigency that would justify such a search, and without the existence of probable cause.

**First Cause of Action for violations of the Plaintiffs' Fourth and Fourteenth Amendment as per 42 U.S.C. § 1983 for the unlawful entry into one's home without a warrant, against all Defendants in their individual capacities:**

42. Plaintiffs, Cortez Foster and Paula Rodgers, repeat and reiterate each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

43. At roughly 10:00 P.M. on January 29, 2018 the Defendants, along with numerous unknown members of the Buffalo Police Department and agents of New York State Parole, executed a warrantless raid on Plaintiffs' home.

44. As stated, they did so without a warrant, probable cause, or any lawful exception to the warrant requirement.

45. Defendants seized Plaintiffs and restricted their movement by making them sit at a table for four hours. Plaintiff Foster was handcuffed.

46. Defendant McCabe falsely swore out a complaint saying such search was done pursuant to a warrant... it was not.

47. The Defendants McCabe, McDonald, and Pietrzak engaged in a warrantless search of the Plaintiffs' home that lacked any probable cause, with New York State Parole acting as a conduit for the Buffalo Police Department to engage in a fishing expedition.

48. Upon information and belief, this search was conducted at the directive of Defendants Jermain and Degol.

49. The wrongful, unjustifiable, and unlawful apprehensions, arrests and detentions of Plaintiffs were carried out without a valid warrant and without the consent of Plaintiffs or any other authorized individuals.

50. For police to gain entry into the private residence of an individual without a warrant, it has been conclusively determined that, absent exigent circumstances (of which there were none here), an otherwise proper warrantless entry of the home is impermissible. Coolidge v New Hampshire, 403 US 443 (Supreme Court of the United States, 1971).

51. The sanctity of the home is equally invaded when entry is made for the purpose of arrest; that the more serious consequences of the latter class of entry provide a more

compelling reason to require the authority of a warrant in such a situation. United States v Reed, 572 F.2d 412, (2nd Circuit Court of Appeals, 1978). See also Accarino v United States, 179 F.2d 456 (District of Columbia Court of Appeals, 1949).

52. Physical invasion of the home is the "chief evil against which the wording of the Fourth Amendment is directed," United States v United States Dist. Ct., 407 US 297, 313 (Supreme Court of the United States, 1972).

53. Throughout this ordeal, Plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, and Plaintiff Foster was imprisoned and falsely charged. Such conduct establishes a §1983 action pursuant to the above-referenced cases.

54. All of this occurred without any illegal conduct committed by Plaintiffs, as the disposition of any criminal charges lodged against Plaintiff Foster so reflect.

55. The Officer Defendants acted under pretense and color of state law in their individual capacities and within the scope of their respective employment as Buffalo Police Officers and New York State Parole Officers. Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights secured by the United States Constitution.

56. Said above-referenced actions, both individually and in their entirety, fully disregarded the Constitutional rights of the Plaintiffs to be free of unlawful and unreasonable seizures under the Fourth and Fourteenth Amendments of the Constitution. Such actions were objectively unreasonable when viewed by the

perspective of what a reasonable officer would have done under like circumstances.

57.  As a result of the above-referenced Defendants' deprivation of Plaintiffs' civil and Constitutional rights, Plaintiffs' have been damaged in an amount to be determined at trial.

58.  Plaintiffs' demand costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Second Cause of Action for violations of Plaintiff Foster's Fourth and Fourteenth Amendment rights as per 42 U.S.C. § 1983 for the malicious prosecution lodged against him against all named Defendants in their individual capacities:**

59.  Plaintiff, Cortez Foster, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

60.  To prevail on a § 1983 claim for malicious prosecution, a Plaintiff must plead (1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the Defendants' actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

61.  Plaintiff Foster can show all of the above elements existed in relation to him being prosecuted for the offenses of Criminal Possession of a Weapon in the second degree and Criminal Possession of a Weapon in the third degree.

62.  As discussed, Plaintiff Foster was ultimately charged with two counts of Criminal Possession of a Weapon in the second degree, in violation of New York Penal Law §265.03(3); one count of Criminal Possession of a Weapon in the third degree, in violation of New York Penal Law §265.02(7); and one count of Criminal Possession of a Weapon in the third degree, in violation of New York Penal Law § 265.02(8).

63. All of these charges were borne from the fruits of an illegal search upon the Plaintiff's home.

64. As a result of the above-referenced facts, Plaintiff Cortez Foster was subjected to a malicious prosecution, which lead to him being unlawfully incarcerated for roughly nine months. The illegal prosecution and incarceration of Plaintiff Foster came to an end when the Honorable Buffalo City Court Judge Martoche dismissed all charges against Plaintiff on the merits as of October 11, 2018.

65. As detailed above, the Defendant Officers lacked probable cause to initiate the above-referenced proceedings and institute charges against the Plaintiff Foster.

66. As the evidence procured against Defendant Foster was blatantly and illegally obtained, the prosecution lacked any kind probable cause to believe that such prosecution would be successful. Therefore, the prosecution lacked probable cause from its' inception. Boyd v. City of New York, 336 F.3d 72, (2nd Cir 2003).

67. As the lack of probable cause to initiate these proceedings has been sufficiently pled, there is no need to independently plead malice. Malice can be inferred from the lack of probable cause. Cruz v. City of New York, No. 08 Civ. 8640 (LAP), 2010 WL 3020602, at *6 (S.D.N.Y. July 27, 2010); Bleiwas v. City of New York, No. 15 CIV. 10046 (ER), 2017 WL 3524679, at *6 (S.D.N.Y. Aug. 15, 2017).

68. Plaintiff Foster received a favorable termination on all criminal charges lodged against him based on the lack of merit to the charges, in that the evidence was seized illegally, and that independent of that fact, there was a dearth of evidence to establish probable cause as to Plaintiff Foster's guilt.

69. The Defendants' actions deprived Plaintiff Foster of his due process rights and his

right to be free from unreasonable restraints upon his liberty under the Fourth and Fourteen Amendments.

70. As a result, Plaintiff Foster was caused and will continue to undergo and endure severe mental anguish, economic hardship, and distress as a result of all the Defendants' actions and the malicious prosecution he endured.

71. Such deprivations of Plaintiff Foster's right to liberty and happiness were in violation of the rights secured to Plaintiff Foster by the Fourth and Fourteenth Amendments of the United States Constitution as codified by Title 42 U.S.C. § 1983.

72. As a result of the above-referenced Defendants' deprivation of Plaintiff Foster's civil and Constitutional rights, Plaintiff Foster has been damaged in an amount to be determined at trial.

73. Plaintiff Foster demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Plaintiff Foster's Third Cause of Action for the State Claim of Malicious Prosecution Against All Defendants, in their Individual Capacities:**

74. Plaintiff, Cortez Foster, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

75. The elements for a state claim for malicious prosecution are identical to those of a federal claim in the second circuit. Lanning v. City of Glens Falls, No. 17-970 (2d Cir. 2018)

76. Given that Plaintiff Foster fulfilled the notice requirements and was examined at a GML §50-h hearing on February 14, 2019, he is pursuing a state claim as well as a federal claim against said Defendants.

**Plaintiff Foster's Fourth Cause of Action for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C. § 1983 based on the unreasonable seizure, false arrest, and false imprisonment of Plaintiff Foster against all Defendants in their individual capacities:**

77. Plaintiff, Cortez Foster, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

78. To maintain a claim for false imprisonment or false arrest, a plaintiff must establish: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement, and; (4) the confinement was not otherwise privileged. See <u>Bernard v. United States</u>, 25 F. 3d 98, 102 (2d Cir. 1994).

79. Plaintiff Foster was falsely arrested by the above-referenced Defendants' on January 29, 2019, after Defendants engaged in a warrantless search of the Plaintiffs' home that lacked any probable cause.

80. As a result of the baseless charges lodged against him, Claimant Foster was incarcerated from January 29, 2018 until weeks after the dismissal of all charges against him on October 11, 2018.

81. In the decision issued in relation to the suppression hearing, all evidence seized was suppressed as the underlying search was illegal, in that it was conducted in the absence of a search warrant and without the existence of probable cause. Further, even if the evidence was obtained lawfully, there was still a lack of probable cause to connect Plaintiff Foster to the contraband in question.

82. All of the named Defendants played a vital role in the false arrest and continued imprisonment of the Defendant, whether that be by participating in the illegal search, or coordinating said illegal search, charging Plaintiff Foster criminally, or violating him from parole. All Defendants did intend to confine Plaintiff Foster in some way or another. It also cannot be disputed that Plaintiff Foster was conscious of the confinement and at no point did he consent to said confinement.

83. As a result of the above-referenced Defendants' deprivation of Plaintiff Foster's civil and Constitutional rights, Plaintiff Foster has been damaged in an amount to be determined at trial.

84. Plaintiff Foster demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Plaintiff Foster's Fifth Cause of Action for the State Claim of False Arrest and False Imprisonment Against All Defendants in their Individual Capacities:**

85. Plaintiff, Cortez Foster, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

86. The elements for a state claim for illegal arrest and imprisonment are identical to those of a federal claim in the second circuit.

87. Given that Plaintiff fulfilled the notice requirements and was examined at a General Municipal Law (GML) §50-h hearing on February 14, 2019, he is pursuing a state claim as well as a federal claim against said Defendants.

**Plaintiff Foster's Sixth Cause of Action for Violating 42 U.S.C. §1981 Against All Defendants, in their Individual Capacities:**

88. Plaintiff, Cortez Foster, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

89. To establish a 42 USC §1981 claim, a Plaintiff must establish: (1) the Plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the Defendant; (3) the discrimination concerned one or more of the activities enumerated in the statute. See, Milan v. Donaldson, Lufkin & Jenrette, 7 F.3d 1085, 1087 (2d Cir. 1993).

90. "The Second Circuit has broadly construed §1981's equal benefit clause as applying to "racially motivated" torts that deprive a Plaintiff of the equal protection of laws or proceedings for the security of persons and property." Jones v J.C. Penney's Dept. Stores, 2007 US Dist. LEXIS 104120, at *45 [WDNY Jan. 22, 2007, No. 03-CV-920A(F)] citing Phillip v. University of Rochester, 316 F.3d 291, 297-298 (2d Cir. 2003).

91. The relevant events of this complaint that establish a 42 USC §1981 claim, begin on January 27, 2018 when a shooting occurred at Checkmates Bar, located at 1194 East Lovejoy Street, Buffalo, NY 14206.

92. Then, at some point between January 27 and January 29 of 2018, Buffalo Police Detectives reviewed a video of this shooting. One of the City of Buffalo Police Detectives who viewed this video was Defendant Jermain.

93. Defendant Jermain, capriciously and without good cause, identified one of the individuals in the video as Plaintiff Foster. Defendant Jermain then instructed agents of New York State Parole to raid Plaintiffs' residence.

94. Upon reviewing the video, Defendant McPartland, claimants newly assigned parole officer, came to believe "it was possible that the person in the video was Cortez foster."

95. Upon information and belief, it was Defendant Jermain who first suggested to a superior of Defendant McPartland, Defendant Degol, that Plaintiff Foster was depicted in the video.

96. New York State Parole Officer Defendant Degol and Defendant Jermain then met, and Defendant Jermain directed Defendant Degol to have his agents raid Plaintiffs' home.

97. Plaintiff Foster was subjected to the tort of unlawful arrest and imprisonment when he was imprisoned and charged by the Defendant Officers. This unlawful arrest and imprisonment was motivated by the race of Plaintiff, as such imprisonment was the result of racial profiling on the part of the Defendants Officers.

98. The basis for the above conclusion is that, Defendant McPartland testified that the video of the shooting at Checkmate's Bar, which was ultimately never produced, depicted a chaotic scene with numerous individuals moving about. Defendant McPartland failed to specify as to how the individual depicted in the video resembled Plaintiff Foster only able to say that it was a medium sized black male.

99. Defendants Degol and Jermain then met and acting upon this supposed identification, which could apply to millions of American Citizens, Defendant Degol directed Defendant McPartland to make a search of Plaintiffs' home.

100. Such actions present an inference that they were borne from a stereotype that African American individuals all look alike, and speak to the Defendants' beliefs that the freedom and liberty of a person of color is worth significantly less than the same of a white person.

101. As a result of the above-referenced Defendants' deprivation of Plaintiff Foster's civil and Constitutional rights, Plaintiff Foster has been damaged in an amount to

be determined at trial.

102. Plaintiff Foster demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Plaintiff Foster's Seventh Cause of Action for Conspiracy to Deprive an Individual's Rights, in Violation of 42 U.S.C. §1985 Against All Defendants, in their Individual Capacities:**

103. Plaintiff, Cortez Foster, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

104. In order to establish a violation of §1985, a Plaintiff must show that two or more individuals conspired to deprive him of a legal right.

105. Defendant Officers violated the provisions of 42 U.S.C. §1985 in that Defendant Officers conspired to deprive Plaintiff of his rights, privileges and/or immunities pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution, by subjecting him to an unlawful arrest and imprisonment.

106. As a result of Defendants' conspiracy to violate Plaintiff's constitutional and civil rights, Plaintiff suffered psychological distress, trauma, nervousness, anxiety, embarrassment and humiliation.

**Plaintiff Foster's Eighth Cause of Action for the Intentional Infliction of Emotional Distress against all Defendants**

107. Plaintiffs, Cortez Foster and Paula Rodgers, incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

108.     The above-referenced conduct by all actors, in its totality, was unjust, extreme, and outrageous. As a result of such conduct, Plaintiffs have suffered severe emotional distress in the form of sleeplessness, loss of appetite, anxiety, and depression.

**Punitive Damages against All Defendants, in their Individual Capacities:**

109.     Plaintiffs, Cortez Foster and Paula Rodgers, incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

110.     Defendant Officers, in their individual capacities, were deliberately indifferent to Plaintiffs' Constitutional rights. As a result of such indifference, said Defendants engaged in a warrantless search of the Plaintiffs' home that lacked any probable cause.

111.     Punitive damages are justified against the above-stated Defendants for their deliberate indifference, malice, and racial animus directed towards the Plaintiffs herein.

WHEREFORE, the Plaintiffs demand judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

A.  Compensatory damages in favor of the Plaintiffs in an amount to be determined by a jury;

B.  Exemplary damages in favor of the Plaintiffs;

C.  Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and

D.  Such other relief as the court may deem appropriate.

DATED:   Buffalo, New York
         June 24, 2019

THE LAW OFFICES OF MATTHEW ALBERT ESQ.

By:/s/ Matthew Albert
MATTHEW ALBERT, ESQ.
Attorney for Plaintiffs
Office and P.O. Address
1207 Delaware Avenue, Suite 208
Buffalo, New York 14209
(716) 445-4119