UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CORTEZ FOSTER and PAULA RODGERS, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:19-cv-843 |
| CITY OF BUFFALO POLICE OFFICER SHAWN MCCABE, CITY OF BUFFALO POLICE OFFICER PATRICK MCDONALD, CITY OF BUFFALO POLICE LIEUTENANT JONATHAN PIETRZAK, CITY OF BUFFALO POLICE HOMICIDE DETECTIVE JOY JERMAIN, NEW YORK STATE PAROLE OFFICER JOSE MELENDEZ, NEW YORK STATE PAROLE OFFICER SEAN MCPARTLAND, NEW YORK STATE PAROLE OFFICER THOMAS DEGOL,[1] | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR PARTIAL DISMISSAL**
(Doc. 3)

Cortez Foster and his mother Paula Rodgers sue the above-captioned municipal police officers and state parole officers in their individual capacities under 42 U.S.C. § 1983 and other provisions of federal and state law. Plaintiffs allege that their home was subjected to an illegal search by or at the behest of Defendants on January 29, 2018, and that Mr. Foster was subjected to unlawful arrest, malicious prosecution, wrongful imprisonment, and racial discrimination.

---

[1] Per the advice of Defendants (Doc. 3-1 at 2 n.1), the Clerk is respectfully directed to amend the caption to revise the spelling of "Thomas DeGol" to "Thomas DeGal."

(Doc. 1.) Defendants Thomas DeGal and Sean McPartland (the "State Defendants")[2] have filed a Motion for Partial Dismissal under Fed. R. Civ. P. 12(b)(6) seeking dismissal of all claims against them except for the § 1983 false arrest and malicious prosecution claims and the conspiracy claim under 42 U.S.C. § 1985. (Doc. 3-1.) Plaintiffs concede that their New York common-law claims can only be brought in New York's Court of Claims, and Plaintiffs state that they have brought those claims in the appropriate jurisdiction. (Doc. 10 at 1.) Plaintiffs otherwise oppose the motion. (*See id.*) The State Defendants filed a reply on October 25, 2019. (Doc. 11.)

## Background

The Complaint includes the following allegations. Plaintiff Paula Rodgers currently resides in the upper unit of a Deerfield Avenue property in Buffalo, New York. (Doc. 1 ¶ 2.) She resided there during the events relevant to the Complaint. Plaintiff Cortez Foster is Ms. Rodgers's son. (*See id.* ¶ 19.) Mr. Foster currently resides elsewhere in Buffalo but he resided at the Deerfield Avenue property's upper unit during the events referenced in the Complaint. (*Id.* ¶ 3.)

Mr. Foster was released on parole on March 6, 2017. (*Id.* ¶ 19.) He is a black male with "numerous tattoos and distinguishing characteristics." (*Id.* ¶ 27.) He was assigned to the supervision of New York State parole, and upon his release to parole he was living with his mother at her parole-approved address at the upper unit of the Deerfield Avenue property. (*Id.* ¶ 19.)

---

[2] The Complaint names three New York state parole officers as defendants, but the Motion for Partial Dismissal is brought by only two of those three officers. For present purposes, the court refers to Officers DeGal and McPartland as the "State Defendants."

There was a "shooting incident" at the Checkmate Bar on East Lovejoy Street in Buffalo on January 27, 2018. (*Id.* ¶ 20.) Neither Plaintiff was at the Checkmate Bar on that date. (*Id.*) Mr. Foster had not gone to the Checkmate Bar at any time since he was released on parole. (*Id.* ¶ 36.) He was at home abiding by his curfew on January 27, 2018. (*Id.*)

At some point between January 27 and January 29, 2018, a number of New York State parole officers and Buffalo police detectives reviewed a video of the Checkmate Bar incident "to see if they could positively identify any of the individuals involved with this incident." (*Id.* ¶ 21.) Parole officer Sean McPartland was one of the individuals who reviewed the video. (*Id.* ¶ 22.) He later testified that the video "depicted a chaotic scene with numerous individuals moving about, and the video was of a low quality." (*Id.* ¶ 26.) At the time he reviewed the video Officer McPartland was Mr. Foster's newly-assigned parole officer. (*Id.* ¶ 23.) He had not yet met Mr. Foster. (*Id.*)

Buffalo police detective Joy Jermain and state parole officer Thomas DeGal also reviewed the video. (*Id.* ¶ 22.) Officer DeGal was Officer McPartland's superior. (*Id.* ¶ 95.) Detective Jermain "identified" one of the individuals in the video as Mr. Foster. (*Id.* ¶ 93.)[3] Plaintiffs allege upon information and belief that Detective Jermain was the officer who "first suggested" to Officer DeGal that Mr. Foster was depicted in the video. (*Id.* ¶ 95.) Upon reviewing the video, Officer McPartland "came to believe 'it was possible that the person in the video was Cortez Foster.'" (*Id.* ¶¶ 24, 94.)[4]

---

[3] Plaintiffs assert that Detective Jermain's purported identification of Mr. Foster as one of the individuals in the video was "capricious[] and without good cause." (*Id.* ¶ 93.)

[4] The quotation regarding what Officer McPartland allegedly came to believe comes from a transcript—attached as an exhibit to the Complaint—of an October 11, 2018 hearing before Buffalo City Court Judge Amy C. Martoche. (Doc. 1-1.) At that hearing Judge Martoche found

3

Plaintiffs allege that Detective Jermain directed parole officers DeGal and McPartland to raid and search Plaintiffs' house. (*Id.* ¶ 25.) At approximately 10:00 p.m. on January 29, 2018, Buffalo police lieutenant Jonathan Pietrzak and officers Shawn McCabe and Patrick McDonald, together with parole officers Jose Melendez and Mr. McPartland, searched and seized Plaintiffs and their residence at the upper unit of the Deerfield Avenue property. (*Id.* ¶ 29.) The search was conducted without a warrant. (*Id.* ¶ 30.)

During the search, Officer Melendez recovered a Norinco AK-47 firearm in the heating duct of the basement of the Deerfield avenue property. (*Id.* ¶ 32.) Officer McPartland recovered ammunition and a revolver from the basement heating duct. (*Id.* ¶ 34.) The basement is a common area shared by both the upper and lower units of the residence. (*Id.* ¶ 32.) Mr. Foster never makes use of the basement area. (*Id.*) Neither Plaintiff ever possessed the firearms or the ammunition that were recovered during the search. (*Id.* ¶ 35.)

Mr. Foster was arrested and taken into custody on January 29, 2018. (*Id.* ¶ 37.) He was arraigned in Buffalo City Court on January 30, 2018 on multiple state felony and misdemeanor firearms charges. (Doc. 1-2.) The Buffalo City Court held a suppression hearing and heard testimony from Officer McPartland and from several members of Mr. Foster's family. (Doc. 1-1 at 2.) Mr. Foster's conditions of parole and the video of the Checkmate Bar shooting incident were not introduced at the suppression hearing. (*Id.* at 3.) Officer McPartland did not specify how the individual depicted in the video resembled Mr. Foster, apart from saying that the individual in question was a "medium sized black male." (*Id.* ¶ 27.)

---

that Officer McPartland "looked at the video and he said, and I quote, it was possible that the person in the video was Cortez Foster." (*Id.* at 2–3.)

The Buffalo City Court suppressed the evidence and dismissed the charges on October 11, 2018. The court reasoned that "a parolee's status cannot be exploited to allow for a search which is solely designed to collect contraband or aid in an independent criminal investigation" and that "failure to provide the conditions of parole and the failure to provide the video" prevented the court from analyzing whether the warrantless search was rationally and reasonably related to the parole officer's duties. (*See* Doc. 1-1 at 3–4.) Mr. Foster was incarcerated from January 29, 2018 until "several days" after the dismissal of the charges against him on October 11, 2018. (Doc. 1 ¶ 40.)

## **Analysis**

Plaintiffs' Complaint advances eight causes of action. The first cause of action is brought by both Plaintiffs and alleges a § 1983 claim for unlawful entry into their home in violation of the Fourth and Fourteenth Amendments. (Doc. 1 ¶¶ 42–58.) Mr. Foster (alone) asserts the remaining seven causes of action. (*Id.* ¶¶ 59–108.)

The State Defendants' motion does not seek dismissal of the second, fourth, or seventh causes of action (a § 1983 malicious-prosecution claim, a § 1983 false-arrest claim, and a § 1985 conspiracy claim, respectively). The court accordingly does not address those claims here. Plaintiffs have conceded that their state-law claims (the third, fifth, and eighth causes of action) should be dismissed in favor of action in a different jurisdiction. The court will accordingly dismiss those claims without prejudice.

The court's analysis therefore focuses on the remaining two counts: Plaintiffs' first cause of action under § 1983 for alleged unlawful warrantless entry into their home, and the sixth cause of action brought by Mr. Foster alleging racial profiling and discrimination in violation of 42 U.S.C. § 1981. As to the first cause of action, the State Defendants essentially argue that

Mr. Foster's status as a parolee neutralizes Plaintiffs' Fourth Amendment claims against them. The State Defendants contend that the § 1981 claim for racial discrimination should be dismissed because § 1983 supplies the exclusive federal remedy.

I.  **Rule 12(b)(6) Standard**

To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). The court must also draw all reasonable inferences in the non-moving party's favor. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

II.  **Alleged Unlawful Entry and Search**

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Barner*, 666 F.3d 79, 82 (2d Cir. 2012) (quoting *United States v. Newton*, 369 F.3d 659, 664 (2d Cir. 2004)). Although warrantless searches are "generally presumed unreasonable," a state's operation of a parole system "presents special needs justifying a departure from the traditional Fourth Amendment warrant requirement." *Newton*, 369 F.3d at 665. New York operates a parole system under which a parolee must "permit his parole officer to visit him at his residence and/or place of employment" and must "permit the search and inspection of his person, residence and property." N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(d).

Notwithstanding that consent, in New York, "the determination as to whether a warrantless parole search 'was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty.'" *Barner*, 666 F.3d at 84 (quoting *People v. Huntley*, 371 N.E.2d 794, 797 (N.Y. 1977)). Prior to the Supreme Court's 2006 decision in *Samson v. California*, 547 U.S. 843, the Second Circuit had held this New York rule (or "*Huntley* standard") to be coextensive with the requirements of the Fourth Amendment. *See Barner*, 666 F.3d at 84 (citing *United States v. Grimes*, 225 F.3d 254, 259 n.4 (2d Cir. 2000) (per curiam)).

But in *Samson*, the Supreme Court held that the Fourth Amendment was not violated by a suspicionless search of a parolee conducted under the authority of a California law under which every parolee "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Samson*, 547 U.S. at 846 (quoting Cal. Penal Code Ann. § 3067(a)). The Second Circuit has since stated that "the law is unclear whether the *Huntley* standard has been superseded by *Samson*." *Black v. Petitinato*, 761 F. App'x 18, 21 (2d Cir. 2019) (summary order). Indeed, the Second Circuit has noted "that it is an open question whether *Samson* may justify a parole officer's suspicionless search of a New York parolee's home." *Id.* Because of that open question, the court in *Black* affirmed the grant of summary judgment to the defendants based on qualified immunity. *Id.* at 20.

Although the State Defendants' brief includes a passing citation to *Samson*, the State Defendants argue only that the warrantless search in this case was justified under the *Huntley* standard. (*See* Doc. 3-1 at 6.) The State Defendants do not argue for application of the "lower

7

bar" imposed in *Samson*. *Barner*, 666 F.3d at 86 (quoting *United States v. Watts*, 301 F. App'x 39, 42 n.2 (2d Cir. 2008)). Nor do the State Defendants' moving papers explicitly invoke or mention qualified immunity. Only in their reply memorandum—in the context of addressing Ms. Rodgers's § 1983 claim—do the State Defendants suggest that all defendants will be entitled to qualified immunity "when Summary Judgment motions are filed in this matter." (Doc. 11 at 5.)

This court has previously noted its inherent power to grant summary judgment sua sponte based upon the defense of qualified immunity. *Doyle v. Coombe*, 976 F. Supp. 183, 187 (W.D.N.Y. 1997). Other courts have taken up the issue of qualified immunity sua sponte in the motion-to-dismiss context. *See McClean v. Cty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *12 n.14 (S.D.N.Y. Dec. 3, 2018). Moreover, "because qualified immunity protects officials not merely from liability but from litigation, . . . the issue should be resolved when possible on a motion to dismiss, 'before the commencement of discovery,' . . . to avoid subjecting public officials to time consuming and expensive discovery procedures." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The court will accordingly invite further briefing on the issue of qualified immunity as to both Plaintiffs' § 1983 unlawful-search claims.

## III. Racial Discrimination

The Complaint's sixth cause of action is a claim of racial discrimination in purported violation of 42 U.S.C. § 1981. Plaintiffs allege that the "identification" of Mr. Foster from the video of the incident at the Checkmate Bar and Defendants' subsequent warrantless search "present an inference that [such actions] were borne from a stereotype that African American individuals all look alike . . . ." (Doc. 1 ¶ 100.) The State Defendants seek dismissal of this

8

cause of action on the grounds that 42 U.S.C. § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Tchatat v. City of N.Y.*, No. 14 Civ. 2385(LGS), 2015 WL 6159320, at *2 (S.D.N.Y. Oct. 20, 2015).

In their opposition, Plaintiffs state that they "recognize the appropriate statute to bring a racial discrimination claim against state actors is 42 U.S.C. § 1983, as opposed to 42 U.S.C. § 1981." (Doc. 10 at 4.) Plaintiffs assert that the claim is valid notwithstanding the misidentification of the appropriate statutory provision, and they state that they "will most likely seek to amend the complaint by way of a stipulation, unless a motion is necessary." (*Id.* at 5.) The State Defendants reply that Plaintiffs "concede that the § 1981 claim is mispled." (Doc. 11 at 2.)

The court will dismiss the sixth cause of action insofar as it purports to be a § 1981 claim. This dismissal is without prejudice to a motion to amend to assert the racial discrimination claim under § 1983. The court invites the parties to brief the impact of qualified immunity on any amended racial discrimination claim under § 1983.

## Conclusion

Defendants Thomas DeGal and Sean McPartland's Motion for Partial Dismissal is GRANTED IN PART and RESERVED IN PART.

Mr. Foster's state-law claims (the third, fifth, and eighth causes of action) are DISMISSED without prejudice.

Mr. Foster's racial discrimination claim (the sixth cause of action) is DISMISSED insofar as it purports to be a § 1981 claim. This dismissal is without prejudice to a motion to amend to assert the racial discrimination claim under § 1983.

The court RESERVES ruling on the motion to dismiss Plaintiffs' § 1983 unlawful-search claims pending additional briefing on qualified immunity. The State Defendants may file a supplemental brief within 30 days from the date of this decision. Plaintiffs may file a supplemental response within 30 days of the State Defendants' filing. Supplemental briefs shall be limited to not more than 15 pages.

Dated this 26th day of November, 2019.

Geoffrey W. Crawford, Judge
United States District Court